OPINION OF THE COURT
Per Curiam.
Order, dated June 19, 2014, reversed, without costs, landlord’s motion denied and final judgment vacated.
These 2008 consolidated holdover proceedings, based upon allegations that the rent-stabilized tenant did not primarily reside in the apartment premises and engaged in unlawful rent profiteering, were settled in April 2009 pursuant to a so-ordered stipulation. The stipulation provided, in relevant part, that landlord “waives and releases any and all claims” against tenant; that tenant will “remain ... a rent stabilized tenant”; that tenant “without in any way admitting to any of the allegations” agrees to execute a renewal lease, and that tenant “in no way waives any right” under the law. Critically, however, the stipulation also provided that “[ajfter May 31, 2014, [tenant] will waive any right to a renewed rental of the premises as a rent stabilized tenant.”
In June 2014, within several weeks of the purported rent stabilization waiver date, landlord moved for entry of a possessory judgment against tenant based upon the waiver provision of the stipulation, arguing that the agreement permitted tenant to remain in the apartment as a stabilized tenant only for a five-year period that expired on May 31, 2014. Civil Court granted landlord the possessory remedy it sought and, on tenant’s appeal, we now reverse.
“[A]n agreement in purported or actual settlement of a landlord-tenant dispute which waives the benefit of a statutory protection is unenforceable as a matter of public policy, even if *79 it benefits the tenant” (Drucker v Mauro, 30 AD3d 37, 38 [2006], lv dismissed 7 NY3d 844 [2006]; see Rent Stabilization Code [9 NYCRR] § 2520.13). The stipulation here at issue is, on its face, one to “waive the benefit” of rent stabilization, since “tenant[ ] waived . . . [her] right to timely renewal of [her] lease, [which constitutes] a sufficient basis for voiding the agreement” (Drucker v Mauro, 30 AD3d at 40; see Riverside Syndicate, Inc. v Munroe, 10 NY3d 18 [2008]). If enforced, the terms of the stipulation would effectively deregulate the rent-stabilized apartment on a specified date, a result inimical to the rent stabilization scheme.
Lowe, III, P.J., Schoenfeld and Hunter, Jr., JJ., concur.