This opinion is uncorrected and subject to revision before
publication in the New York Reports.
--------------------------------------------------------------

No. 46
Dorothy M. Faison, &c.,
          Appellant,
       v.
Tonya Lewis, &c., et al.,
          Defendants,
Bank of America, N.A.,
          Respondent.

David Gordon, for appellant.
Liezl Irene Pangilinan, for respondent.

RIVERA, J.:

          The legal question raised in this appeal is whether

plaintiff Dorothy Faison is time-barred under CPLR 213 (8) from

seeking to set aside and cancel, as null and void, defendant Bank

of America's mortgage interest in real property conveyed on the

authority of a forged deed.  Under our prior case law it is well-

settled that a forged deed is void ab initio, meaning a legal

- 1 -

nullity at its inception. As such, any encumbrance upon real property based on a forged deed is null and void. Therefore, the statute of limitations set forth in CPLR 213 (8) does not foreclose plaintiff's claim against defendant. As the Appellate Division affirmed the dismissal of plaintiff's claims as time-barred, we now reverse.

## I.

Plaintiff is the daughter and administrator of the estate of her father, Percy Lee Gogins, Jr. ("Gogins"). Gogins and his sister, defendant Dorothy Lewis ("Lewis") inherited from their mother, as tenants in common, a three-family house in Brooklyn. A few years after the mother's death, in May 2000, Lewis conveyed by quitclaim deed her half-interest in the property to her daughter Tonya Lewis ("Tonya"). In February 2001, Tonya recorded a deed claiming to correct the prior deed from Lewis. This corrected deed, dated December 14, 2000, allegedly conveyed Gogins's half-interest in the real property to Tonya. Thus, if the corrected deed were valid, it would convey to Tonya a fee interest in the property. Gogins passed away in March 2001.

In September 2002, plaintiff filed an action on behalf of Gogins's estate against Lewis and Tonya, claiming the corrected deed was void because her father's signature was a forgery. In April 2003, Supreme Court dismissed the complaint on

the ground that plaintiff lacked capacity to sue because she was not the estate's administrator.  At the time, Gogins's widow was the administrator.

In December 2009, Tonya borrowed $269,332.00 from defendant Bank of America (BOA), which she secured with the mortgage, granted in favor of defendant Mortgage Electronic Registration Systems, Inc. (MERS).  Several months later, in July 2010, Surrogate's Court appointed plaintiff administrator of Gogins's estate.  In her supporting affidavit explaining her delay in seeking appointment, plaintiff asserted that her mother's lawyer led her to believe that he had secured a judgment in favor of the estate, when in fact the lawyer, now disbarred, had failed to take action on her mother's behalf.

The month following her appointment, in August 2010, plaintiff filed the underlying action against Lewis, Tonya, BOA and MERS to declare the deed and mortgage null and void based on the alleged forgery.  Thereafter, BOA moved to dismiss the complaint under CPLR 3211 (a) (5) as untimely under CPLR 213 (8), and plaintiff cross-moved to dismiss the statute of limitations affirmative defense asserted in the BOA and MERS joint answer. Supreme Court granted the motion to dismiss the complaint in its entirety as time-barred, and denied plaintiff's cross-motion as moot.

The Appellate Division modified the order, denying the motion to dismiss as against the individual defendants and MERS,

on procedural grounds, leaving the action pending against those defendants (Faison v Lewis, 106 AD3d 1047 [2d Dept 2013]).  On the merits, the Appellate Division concluded, in reliance on Second Department precedent, that plaintiff's forgery-based claim against defendant BOA was subject to the six-year statute of limitations for fraud claims set forth in CPLR 213 (8) (id. at 1048).  We granted plaintiff leave to appeal against defendant BOA.[1]

II.

As a preliminary matter, because this is an appeal from a dismissal under CPLR 3211 (a) (5), "[w]e accept the facts as alleged in the complaint as true, accord plaintiff[] the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory" (Leon v Martinez, 84 NY2d 83, 87-88 [1994] [citation omitted]).  Accordingly, for purposes of this appeal, we must assume that the deed is forged.[2]

Plaintiff contends that a forged deed has long been treated as void ab initio, entirely without effect from

---

[1] We note that the Appellate Division order is final only as to defendant BOA.

[2] In their answer, Lewis and Tonya assert that the deed is valid because "Percy Lee Gogins . . . authorize[d] and consented to the transfer and conveyance of his ownership interest in the Premises to Tonya Lewis."

inception.  Therefore, the CPLR 213 (8) statute of limitations does not apply to her claims to vacate and declare the deed and defendant BOA's mortgage-based interest in the property a legal nullity.  We agree.

In Marden v Dorthy, this Court held that a forged deed was void at its inception, finding it to be a "spurious or fabricated paper" (160 NY 39, 47 [1899]), a forgery characterized by "the fraudulent making of a writing to the prejudice of another's rights" (id. at 53).  As Marden noted, a forged deed lacks the voluntariness of conveyance (see id. at 54).  Therefore, it holds a unique position in the law; a legal nullity at its creation is never entitled to legal effect because "[v]oid things are as no things" (id. at 56).

A forged deed that contains a fraudulent signature is distinguished from a deed where the signature and authority for conveyance are acquired by fraudulent means.  In such latter cases, the deed is voidable.  The difference in the nature of the two justifies this different legal status.  A deed containing the title holder's actual signature reflects "the assent of the will to the use of the paper or the transfer," although it is assent "induced by fraud, mistake or misplaced confidence" (Marden, 160 NY at 50; see also Rosen v Rosen, 243 AD2d 618, 619 [2d Dept 1997]; 26A C.J.S. Deeds § 153 ["where the grantor knowingly executes the very instrument intended, but is induced to do so by some fraud in the treaty or by some fraudulent representation or

pretense, the deed is merely voidable"]).  Unlike a forged deed, which is void initially, a voidable deed, "until set aside, . . . has the effect of transferring the title to the fraudulent grantee, and . . . being thus clothed with all the evidences of good title, may encumber the property to a party who becomes a purchaser in good faith" (Marden, 160 NY at 50).

A forged deed, however, cannot convey good title, and "[i]t is legally impossible for any one [sic] to become a bona fide purchaser of real estate, or a purchaser at all, from one who never had any title, and that is this case" (id. at 56; see also Yin Wu v Wu, 288 AD2d 104, 105 [1st Dept 2001] ["A forged deed is void and conveys no title"]; 2-15 Warren's Weed New York Real Property § 15.01 ["A purchaser who takes title through a forged deed cannot be a bona fide purchaser, even if the purchaser did not have knowledge of the forgery"]).  New York's rule reflects a general well-established principle of real property law (see e.g. Harding v Ja Laur Corp., 20 Md App 209, 214 [Md Ct Spec App 1974] ["A forged deed . . . is void ab initio"]; Scott D. Erler, D.D.S. Profit Sharing Plan v Creative Fin. & Investments, L.L.C., 349 Mont 207, 214 [2009] ["forged conveyances are void ab initio and do not transfer title"]; Brock v Yale Mortg. Corp., 287 Ga 849, 852 [2010] ["we have also long recognized that a forged deed is a nullity and vests no title in a grantee"]; Akins v Vermast, 150 Or App 236 n 7 [Or Ct App 1997] "If fraud is 'in factum,' such as a forged deed or a situation

analogous to forgery, the deed is void ab initio and will not support subsequent title in any person"]; First Nat. Bank in Albuquerque v Enriquez, 96 NM 714, 716 [1981] ["a forged deed is a void deed and transfers no interest"]; Williams v Warren, 214 Ark 506, 511 [1949] ["No one can claim that an estate in land should be divested by forgery"]).

It is similarly true that no property shall be encumbered, including by a mortgagee, in reliance on a forged deed (see Marden, 160 NY at 51; see also Cruz v Cruz, 37 AD3d 754, 754 [2d Dept 2007]["A deed based on forgery or obtained by false pretenses is void ab initio, and a mortgage based on such a deed is likewise invalid"]; Jiles v Archer, 116 AD3d 664, 666 [2d Dept 2014] ["If a document purportedly conveying a property interest is void, it conveys nothing, and a subsequent bona fide purchaser or bona fide encumbrancer for value receives nothing"]; 2-15 Warren's Weed New York Real Property § 15.09 ["If the conveyance is void, the purchaser or encumbrancer will not enjoy any of the rights of a bona fide purchaser"]; 43A NY Jur 2d Deeds § 218 ["a forged deed is null and void, and conveys nothing, and a purchaser or mortgagee from the grantee, even for value and without notice of the forgery, will not be protected"]).

Moreover, New York's recording statute (Real Property Law § 291) does not apply to a forged deed (see Albany County Sav. Bank v McCarty, 149 NY 71, 74 [1896]; Grosch v Kessler, 231 AD 870, 870 [2d Dept 1930]).  Neither can recording a forged deed

transform it into a document with legal authority to establish a valid property interest, for it "does not change the legal rights of anyone" (Marden, 160 NY at 56). "The fact that a false and fabricated writing of this character is deposited in a public office for record, and is actually recorded, can add nothing to its legal efficacy. The recording statute applies to "genuine instruments and not to forged ones" (id. at 56, citing Albany County Sav. Bank, 149 NY at 74).

Given the clarity of our law that a forged deed is void ab initio, and that it is a document without legal capacity to have any effect on ownership rights, the question remains whether a claim challenging a conveyance or encumbrance of real property based on such deed is subject to a time bar. Our case law permits only one answer: a claim against a forged deed is not subject to a statute of limitations defense.

As this Court held in Marden, a forged deed is void, not merely voidable. That legal status cannot be changed, regardless of how long it may take for the forgery to be uncovered. As this Court made clear in Riverside Syndicate, Inc v Munroe, a statute of limitations "does not make an agreement that was void at its inception valid by the mere passage of time" (10 NY3d 18, 24 [2008], citing Pacchiana v Pacchiana, 94 AD2d 721 [2d Dept 1983]). Consequently, plaintiff may seek to vacate the deed and defendant's encumbrance upon the property. If, as plaintiff claims, the deed is a forgery, then it was never valid

and Tonya lacks title to Gogins's half-interest in the property based on the "corrected" deed.

Indeed, this is the prevailing approach in other jurisdictions (see e.g. Moore v Smith-Snagg, 793 So 2d 1000, 1001 [Fla Dist Ct App 5th Dist 2001]["(o)f course, there is no statute of limitations in respect to the challenge of a forged deed, which is void ab initio"]; see also Wright v Blocker, 198 So 88, 90-91 [Fla 1940]). The high court of West Virginia, for example, has observed that "there is no statute of limitations regarding void deeds" (MZRP, LLC v Huntington Realty Corp., 2011 W Va LEXIS 240, 2011 WL 12455342 [W Va 2011] [void tax deed]), while the high court of Idaho held that "[b]ecause [a] lease agreement was void ab initio, it could be challenged at any time" (Thompson v Ebbert, 160 P3d 754, 757 [Idaho 2007] [attempted lease void based on a lack of authority to lease only a portion of the property]).

III.

Defendant BOA contends that plaintiff's claim is time-barred because forgery is a category of fraud, and, like any other claim based on fraud, an action challenging a forged deed is subject to the limitations period of CPLR 213 (8). That conclusion cannot be squared with our decisions in Marden and Riverside Syndicate, nor with general principles of real property law. Nor is it supported by compelling policy reasons. On the contrary, our long-standing commitment to the protection of

ownership interests and the integrity of our real property system favors the continued treatment of challenges to forged deeds as distinct from other claims, and exempt from a statute of limitations defense.[3]

Most notably, defendant wholly fails to address Marden and the well-established authority distinguishing forged deeds as void ab initio from instruments that are merely voidable. Instead, defendant, and our dissenting colleagues, seek to distinguish Riverside as a case about illegal contracts, not deeds, and thus should be limited to its subject matter, namely instruments void at inception due to illegality. We are unpersuaded. The fact that Riverside involved an illegal agreement is no basis to limit its analysis as regards the statute of limitations. Instead, the language and analysis employed in Riverside make clear that the holding was based on a rule that is generally applicable to claims involving void documents, including, obviously, forged deeds.

First, Riverside relied on "the nature of a statute of limitations" (10 NY3d at 24). That, of course, refers to the

---

[3]Our dissenting colleagues contend that innocent purchasers who rely on the chain of title will be adversely affected if no statute of limitations applies to forged deed claims (see dissenting op. at 8). However, many individuals rely on the validity of the recording system. The dissenters fail to recognize the great harm done if forged deeds may be permitted to obtain legal effect simply through the passage of time. Moreover, even under the dissenters' approach, a forged deed claim may still be timely after six years, if filed pursuant to the discovery rule of CPLR 213 (8).

statute's function as barring stale claims.  In contrast, a statute of limitations cannot grant legal significance to a document expressly rejected under the law; it cannot be deployed to validate what the law has never recognized.

Second, Riverside cited Pacchiana, a case that exempted a void document from the application of the statute of limitations, and in doing so distinguished between void and voidable documents, highlighting the significance of that legal distinction.  In Pacchiana, the Appellate Division held that where a prenuptial agreement fails to comply with real property rules regarding the proper recording of a conveyance, the agreement is void at its inception and cannot be subject to the statute of limitations (Pacchiana, 94 AD2d at 722).  Although the case involved a contract and not a forged deed, the court nevertheless relied on statutory rules of real property conveyance, not general public policy against illegal contracts, in finding the prenuptial agreement to be void (id. at 721).  Given this Court's reliance on Pacchiana, the Riverside decision clearly applied a rule of general applicability regarding void documents to the specific facts of that case.  There is, then, no reason to limit Riverside's reach, or forgo application of the same general rule -- a document void at its inception has no effect and cannot be subject to a statute of limitations -- to cases involving a forged deed.

The defendant notes that the agreement in Riverside

violated the Rent Stabilization Law, and because of its illegal
nature violated public policy.  However, defendant ignores the
significant public policies underlying our real property system,
which have animated the previously discussed real property rules
that treat forged deeds as a legal nullity.  The public policy
concerns that underlie prohibitions on enforcement of illegal
contracts are surely no more consequential than those applicable
to forged deeds, and a forged deed is no less offensive to our
legal system than an illegal contract.  As the Court stated in
Marden, a forged deed is essentially "a false making, with an
evil design" (160 NY at 55).  Indeed, New York has determined
that forgery is sufficiently morally unacceptable and dangerous
to society that our State has criminalized forgery, subjecting
wrongdoers to potential criminal prosecution with the attendant
risk of incarceration (see Penal Law §§ 170.05, 170.10, and
170.15).  Therefore, we will not impose statutes of limitations
on forged deeds because the resulting prejudice to the "rights of
the true owner of real estate" only "open[s] the door for the
destruction of all titles, and makes[s] it much easier for the
criminal to purloin real than personal property" (see Marden, 160
NY at 57-58).

Having failed to persuade based on our caselaw, the
defendant argues that a statute of limitations is necessary to
protect the sanctity of real property titles.  However, section
213 (8) contains a two-year discovery rule, which potentially

extends the life of a claim years beyond the six-year statutory

term.  As a consequence, land titles already are subject to

challenge, based on a forged deed, far into the future.[4]

Moreover, in a line of cases including Ford v Clendenin

(215 NY 10 [1915]) and the more recent Orange and Rockland Util.,

Inc. v Philwold Estates, Inc. (52 NY2d 253 [1981]), we recognized

that certain property interests are exempt from any time limit.

This Court observed in Ford that

> "an owner in possession has a right to invoke
> the aid of a court of equity at any time
> while he is so the owner and in possession,
> to have an apparent, though in fact not a
> real incumbrance discharged from the record
> and such a right is never barred by the
> statute of limitations. It is a continuing
> right which exists as long as there is an
> occasion for its exercise"

(215 NY at 16; see also Orange and Rockland Util., Inc., 52 NY2d

at 261, citing Ford).  Similarly, this Court held in Cameron

Estates v Deering that the statute of limitations did not bar

plaintiff's action challenging the forced sale of property where

plaintiff paid all required taxes, rendering the underlying tax

deed void ab initio (308 NY 24, 31 [1954]).  Thus, contrary to

defendant's argument, there are property claims that cannot be

---

[4]Our dissenting colleagues find the discovery rule
advantageous because it allows a victim of fraud to pursue a
claim beyond the six-year statute of limitations prescribed by
the CPLR (see dissenting op at 5).  That possibility of filing a
claim years, if not decades, after the deed is forged is the very
reason why the defendant and dissenters' arguments for a statute
of limitations are underwhelming.

extinguished by the passage of time.

Our dissenting colleagues argue that a statute of limitations is necessary in order to avoid litigation over claims which are difficult to defend because of the mere passage of time (see dissenting op at 6).  As we have stated, the discovery provision in the statute allows for this possibility (see CPLR 213 [8]).  In any case, the stale claims alluded to are just as likely to be difficult to prove, reducing the number of claims that will be filed when evidence has been destroyed and memories have faded.[5]  Moreover, the argument for bringing finality to potentially stale claims fails to make the case for why the desire for repose is any more significant than the need to ferret out forged deeds and purge them from our real property system. As the law makes clear, a forged deed has no legal significance and cannot convey title, therefore there is no reason to impose barriers to those who seek to vacate such deed as null and void.[6]

---

[5]In her reply brief, plaintiff concedes, and indeed affirmatively asserts, that forged deed claims are subject to a laches defense.  This is generally the case in states that consider forged deeds void and thus apply no statute of limitations to bar actions to invalidate such deeds (see e.g. Robinson v Estate of Harris, 391 SC 114, 131, 705 SE2d 41, 50 [2011]).  On this appeal, however, we need not consider laches because we must accept as true plaintiff's claims that she diligently sought to vacate the deed on forgery grounds (see Martinez, 84 NY2d at 87-88).

[6]Our dissenting colleagues argue that the loss of property suffered by a plaintiff whose forged deed claim is time-barred is no more offensive than the loss experienced by any other plaintiff whose claim is foreclosed as untimely (see dissenting op at 9).  This is no point at all because it ignores the fact

IV.

For over a century, since this Court's decision in Marden, a forged deed has been treated in New York as void ab initio. As the Court recognized in Riverside, a statute of limitations cannot validate what is void at its inception. Therefore, a void deed is not subject to a statutory time bar. The defendant's arguments are in contravention of Marden and Riverside, and would subject a claim of deed forgery to a six-year statute of limitations under CPLR 213 (8), with the result that a forged deed may be relied upon to convey title and for purposes of encumbering real property. However, under well-established real property principles, because only a holder of legal title may convey an interest in real property, no property interest can be conveyed by a forged deed, and no person may be a bona fide purchaser of real estate on the force of such deed. Moreover, our recording statute does not apply to a forged deed, with the consequence that recording a forged deed cannot transfer title. We, thus, decline the defendant's invitation to unsettle this established doctrine to the detriment of our state's real property recording system.

---

that forged deeds not only harm the true owner, but also undermine the integrity of our real property system. It is a harm so substantial that we have determined to avoid the effects of a forged deed by denying it any legal significance. It is, in the words of Marden, "no thing[]" (Marden, 160 NY at 56).

To adopt defendant's position is to permit a forged deed to accomplish, by the mere passage of time, what has always been forbidden -- the encumbrance and transfer of title.  Neither law nor public policy nor common sense dictates such outcome.  Defendant fails to present a compelling reason to overturn or ignore our prior case law in the area of real property because as we have recognized, "parties in business transactions depend on the certainty of settled rules, 'in real property more than any other area of the law, where established precedents are not lightly to be set aside'" (172 Van Duzer Realty Corp. v Globe Alumni Student Assistance Ass'n, Inc., 24 NY3d 528, 535 [2014], citing Holy Properties Ltd., L.P. v Kenneth Cole Productions, Inc., 87 NY2d 130, 134 [1995]).  No less so with respect to forged deeds, because landowners, banks, mortgagees, insurers, and a myriad of others depend on the simple rule that a forged deed is a legal nullity that cannot divest ownership or serve to encumber real property.

Accordingly, the order of the Appellate Division, insofar as appealed from, should be reversed and defendant Bank of America, N.A.'s motion to dismiss the complaint against it pursuant to CPLR 3211 (a) (5) denied.

Faison v Lewis

No. 46




LIPPMAN, Chief Judge (dissenting):

I believe that plaintiff's action against defendant Bank of America, seeking to invalidate the Bank's mortgage interest in real property conveyed by an allegedly forged deed, is subject to the six-year statute of limitations under CPLR 213 (8). Because plaintiff did not commence this action within either the applicable six-year limitation period, or two-year discovery window provided by the statute, I would find that the claim is time-barred.

In 1996, defendant Dorothy Lewis and her brother, Percy Lee Gogins, Jr., inherited property located at 1900 Bergen Street in Brooklyn. They took title to the property as tenants in common, each with an undivided one-half interest. Dorothy Lewis subsequently conveyed her interest in the property to her daughter, defendant Tonya Lewis, by quitclaim deed dated May 21, 2000. On February 14, 2001, Tonya Lewis recorded a "correction deed" dated December 14, 2000. That document, which plaintiff alleges is a forgery, purported to correct the earlier quitclaim deed by adding Percy Gogins as an additional grantor, thereby conveying the entire property to Tonya Lewis. Percy Gogins died in March 2001.

- 1 -

Plaintiff Dorothy Faison, Percy Gogins' daughter, commenced a pro se action in Supreme Court in September 2002, alleging that the Lewis defendants had engaged in a scheme to defraud by forging and filing a false deed. The complaint was dismissed under CPLR 3211 (a) because plaintiff lacked capacity to maintain it, as she had not been appointed the executor of her father's estate, and for failure to state a cause of action upon which relief could be granted.

Years passed, during which plaintiff took no further action. In December 2009, defendant Tonya Lewis obtained a mortgage on the property from defendant Bank of America in the amount of $269,332. Soon thereafter, plaintiff petitioned Surrogate's Court for a decree appointing her the administrator of Percy Gogins' estate. In connection with that proceeding, plaintiff submitted an affidavit of delay, in which she represented that she had discovered the existence of the forged deed "[a]t some time in or around 2003." Plaintiff was appointed the administrator of her father's estate in July 2010.

The following month, plaintiff commenced this action, in her capacity as administrator of Gogins' estate, against the Lewis defendants, Bank of America and defendant Mortgage Electronic Registration Systems, Inc. (as nominee for Bank of America). According to the complaint, plaintiff is a resident of the State of Georgia. Plaintiff alleged that Gogins had never authorized the transfer of his ownership interest in the property

and that the December 2000 correction deed was a forgery.  She sought a judgment declaring the deed null and void, directing defendant Tonya Lewis to disgorge half of all rents and profits generated by the premises, and setting aside and canceling the mortgage.  The courts below granted Bank of America's motion to dismiss the action under CPLR 3211 (a)(5) on statute of limitations grounds.

The majority finds that plaintiff's action should not have been dismissed as untimely -- indeed, that it is not subject to any statute of limitations whatsoever -- because the allegedly forged deed was void and therefore incapable of conveying any property interest.  Since the void deed is a nullity, the majority finds that a property owner has no obligation to take prompt legal action to enforce her rights.  The majority correctly relies on Marden v Dorthy (160 NY 39 [1899]) for the proposition that a forged deed is void at its inception (see majority op. at 5).  We agree with this long-held position. However, Marden is not a statute of limitations case and, therefore, reliance on its authority is inappropriate at this procedural juncture.

While a deed proven to have been a forgery cannot operate to affect ownership rights, this does not compel the result that the opportunity to challenge such conveyance is without limit.  "Statutes of limitation are essentially arbitrary time limitations barring the commencement of an action, and they

reflect the legislative judgment that individuals should be protected from stale claims" (McCarthy v Volkswagen of Am., 55 NY2d 543, 548 [1982]).  While statutes of limitation foreclose a party's claim, they do not extinguish a party's underlying right (see Hulbert v Clark, 128 NY 295, 298 [1891]; see also Siegel, NY Prac § 34, at 44 [5th ed 2011] ["The theory of the statute of limitations generally followed in New York is that the passing of the applicable period does not wipe out the substantive right; it merely suspends the remedy"]).

> "In examining the policies underlying
> Statutes of Limitation, this Court has
> emphasized both a defendant's interest in
> repose and 'in defending a claim before [the]
> ability to do so has deteriorated through
> passage of time.'  We have also taken note of
> considerations of judicial economy and
> possible plaintiff fraud where excessive
> factual inquiries would be necessary.
> Balanced against these considerations is the
> injured person's interest in having a
> reasonable opportunity to assert a claim"

(Blanco v American Tel. & Tel. Co., 90 NY2d 757, 773-774 [1997] [internal citations omitted]).

I would conclude that an action to invalidate a forged deed is subject to a statute of limitations defense.  Forgery is closely related to and essentially a type of fraud.  We have previously observed that forgery was "defined by the common law to be the fraudulent making of a writing to the prejudice of another's rights, or the making *malo animo* of any written instrument for the purpose of fraud and deceit" (Marden, 160 NY at 53 [citations omitted]).  It is therefore logical and

reasonable to apply the statute of limitations for fraud to forgery claims (see e.g. Piedra v Vanover, 174 AD2d 191, 194 [2d Dept 1992]). Under CPLR 213 (8), such a cause of action must be commenced within "the greater of six years from the date the cause of action accrued or two years from the time the plaintiff . . . discover[s] the fraud, or could with reasonable diligence have discovered it." The application of the statute of limitations here has the benefit of imposing some limit on the time in which claims can be brought, while also leaving a discovery window for forgery claims which, like fraud, can be concealed from the plaintiff.

A contrary rule under which plaintiff would prevail entails no statute of limitations applicable to an action alleging forgery. We have never so held. To the contrary, the CPLR imposes a six-year limitations period for "actions[s] for which no limitation is specifically prescribed by law" (CPLR 213 [1]). And, despite the majority's repeated invocation of the well-settled principle that a forged deed is a void instrument, not one of the cases it cites addresses the timeliness of this type of action. Rather, New York courts that have considered the issue have consistently applied a six-year statute of limitations to situations like this one (see Vilsack v Meyer, 96 AD3d 827 [2d Dept 2012]; Shalik v Hewlett Assoc., L.P., 93 AD3d 777 [2d Dept 2012]; JP Morgan Chase Bank, N.A. v Kalpakis, 91 AD3d 722 [2d Dept 2012]; Coombs v Jervier, 74 AD3d 724 [2d Dept 2010];

Georgiou v Panayia of Mtns. Greek Orthodox Monastery, Inc., 16
AD3d 998 [3d Dept 2005]; Piedra, 174 AD2d 191; see also Endervelt
v Slade, 194 AD2d 305 [1st Dept 1993]).

Indeed, the absence of any limitations period could
result in the commencement of actions that the passage of time
makes exceedingly difficult, or impossible, to defend; a
plaintiff could, for instance, bring the claim long after the
relevant events, but just after the death of the crucial defense
witness.  Notably, although the majority observes that Florida
technically imposes no statute of limitations in this context,
that state has the "Marketable Record Title Act," which, with
certain exceptions, essentially deems properly recorded deeds to
be valid after a 30-year period (see Fla Stat 712.02; H & F Land
v Panama City-Bay County Airport & Indus. Dist., 736 So 2d 1167,
1172 [1999] ["a root of title based upon a forged deed would
prevail even over an otherwise entirely valid deed recorded
earlier in the chain of title"]; Marshall v Hollywood, Inc., 236
So 2d 114, 120 [1970]).

In analogous circumstances to those presented here, we
have required individuals to abide by applicable limitations
periods (see e.g. Ford v Clendenin, 215 NY 10, 17 [1915]
[applying a 10-year statute of limitations to an action in equity
to quiet title by one who was out of possession]; 8-87 Warren's
Weed, New York Real Property § 87.45; Hechter v New York Life
Ins. Co., 46 NY2d 34, 39 [1978] [applying a six-year statute of

limitations to a UCC claim "against a bank for collecting an instrument over a forged indorsement"]). And, while forgery is subject to criminal liability, there is also a statute of limitations applicable to those crimes (see CPL 30.10 [2] [b], [c]; Penal Law §§ 170.05; 170.10; 170.15 [five years for the felony offenses of first and second-degree forgery and two years for the misdemeanor offense of third-degree forgery]).

Plaintiff asserts that the decision below conflicts with our holding in Riverside Syndicate, Inc. v Munroe (10 NY3d 18 [2008]), wherein we determined that an agreement to pay illegal rent for a rent-stabilized apartment was void and unenforceable by either party. The agreement, under which the tenants agreed to waive the benefit of rent stabilization in exchange for the ability to use the apartment as a second home, was deemed to be violative of public policy and contrary to the express terms of the Rent Stabilization Code (see Riverside Syndicate, 10 NY3d at 22). We rejected the argument that the landlord's action, seeking a declaration that the agreement was void, was barred by the six-year statute of limitations pertaining to contractual obligations or liability (see Riverside Syndicate, 10 NY3d at 24; CPLR 213 [2]). We noted that "[t]his action [was] not one 'upon a contractual obligation or liability'" for which the six-year limitations period was set forth in CPLR 213 (2), but was "to declare that no valid contractual obligations ever existed" (Riverside Syndicate, 10

NY3d at 24).

Riverside is unlike the situation presented here.  It
is well settled that "illegal contracts, or those contrary to
public policy, are unenforceable and that the courts will not
recognize rights arising from them" (Szerdahelyi v Harris, 67
NY2d 42, 48 [1986]).  "[T]he law 'will not extend its aid to
either of the parties [to an illegal contract]' or 'listen to
their complaints against each other, but will leave them where
their own acts have placed them'" (Stone v Freeman, 298 NY 268,
271 [1948], quoting Schermerhorn v Tallman, 14 NY 93, 141
[1856]).  Plaintiff's claim, seeking to invalidate an allegedly
forged deed, does not involve the same public policy concerns.
In contrast with the situation presented by parties attempting to
enforce an illegal contract -- which only involves those parties
-- in a dispute over real property ownership rights, the rights
of an unlimited number of innocent purchasers who rely on the
transfer documents in a chain of title can be affected by a
forged deed.[*]

Plaintiff also relies upon Cameron Estates, Inc. v

---

[*] The majority's reliance on Riverside's reference to
Pacchiana v Pacchiana (94 AD2d 721 [2d Dept 1983]) appears to be
misplaced.  That case did not rely on statutory rules of real
property conveyance to find the prenuptial agreement void.
Rather, the opinion merely referenced real property rules in
addressing the plaintiff's claim that the agreement had not been
executed in conformity with the acknowledgment requirements for
such agreements contained in Domestic Relations Law § 236 (B) (3)
(see Pacchiana, 94 AD2d at 721-722; see also EPTL 5-1.1 [f][2];
Domestic Relations Law § 236 [B][3]).

<u>Deering</u> (308 NY 24 [1954]), in which we held that the statute of limitations could not be invoked to prevent a taxpayer from challenging a void tax deed.  That case, however, is also inapt. The plaintiff in <u>Cameron Estates</u> had paid the taxes on the property and brought the action to remove a cloud on his title.

> "When void tax deeds are attempted to be made
> prima facie evidence of the regularity of the
> proceedings, equity will interfere to permit
> removal as a cloud on title which right may
> be invoked by the owner in possession at any
> time as 'such a right is never barred by the
> Statute of Limitations'"

(<u>Cameron Estates</u>, 308 NY at 31 [citations omitted]).  Plaintiff does not claim to be in possession of the property and it is therefore unnecessary to address the consequences of what would flow from such fact.

The stability of the State's real property system is plainly important and the idea of losing one's property because of a forged deed is, of course, offensive.  But it is no more so than the plight of any innocent plaintiff being barred from attempting to obtain relief from an injury by failing to commence an action within the time limits set by the legislature.  Indeed, it is the prospect of no repose, particularly where the property may have changed hands since the allegedly forged deed, that would appear to endanger the stability of real property transactions.  The majority's rule permits a person who discovers a forged deed to sit on his or her rights and commence an action at any time.  Thus, a plaintiff could do nothing until it became

impossible to defend a claim of forgery, thereby making title to real property subject to reversal indefinitely.  Contrary to the majority's position that its rule will foster security, in fact, the absence of a statute of limitations will result in just the opposite because, under the majority's holding, every deed is subject to attack at any time.  Limitation periods can sometimes work a hardship, but they are set for a reason and particularly where, as here, a discovery window applies, there is no compelling reason to exempt an entire cause of action from any time limit at all.

Here, the deed was allegedly forged in December 2000. In addition, according to her Surrogate's Court submission, plaintiff had been aware of the deed no later than 2003 (indeed, a prior action was commenced in September 2002).  Since, in this circumstance, the two years afforded by the discovery rule would not have extended the six-year statute of limitations, I would find that this action as against the Bank, which was not commenced until August 2010, was untimely and was properly dismissed by the courts below.

*    *    *    *    *    *    *    *    *    *    *    *    *    *    *    *    *

Order, insofar as appealed from, reversed, with costs, and defendant Bank of America, N.A.'s motion to dismiss the complaint against it pursuant to CPLR 3211(a)(5) denied.  Opinion by Judge Rivera.  Judges Read, Pigott and Fahey concur.  Chief Judge Lippman dissents in an opinion in which Judges Abdus-Salaam and Stein concur.

Decided May 12, 2015